UNITED STATES, Appellee

v

MELVIN L. BRYANT, Airman Basic,
U. S. Air Force, Appellant

12 USCMA 133, 30 CMR 133

No. 14,098

Decided January 27, 1961

*Lieutenant Colonel Peter Portrum* argued the cause for Appellant, Accused. With him on the brief were *Colonel James L. Kilgore* and *Lieutenant Colonel Philip J. Williamson.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan, Lieutenant Colonel Francis R. Coogan,* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On March 9, 1960, pursuant to the accused's pleas of guilty, a general court-martial sitting at Shaw Air Force Base, South Carolina, convicted him of absence without leave, escape from lawful confinement, and wrongful appropriation of an automobile, violations of Articles 86, 95, and 121, Uniform Code of Military Justice, 10 USC §§ 886, 895, and 921, respectively. The penalty imposed by the court consisted of dishonorable discharge, total forfeitures and confinement at hard labor for fifteen months. The convening authority reduced the period of imprisonment to one year, but otherwise approved the sentence, and thereafter the findings and sentence were affirmed by a board of review in the office of The Judge Advocate General of the Air Force. We granted accused's petition for review on a single issue concerning the law officer's instructions on sentence.

The facts pertinent to our inquiry are simple. The accused's offenses arose out of his escape from confinement on December 15, 1959, his flight in an automobile he appropriated to his use, and his continued absence without authority for some twenty-eight days. After findings had been returned, but before the court closed to deliberate on punishment, evidence was introduced showing that accused had a record of three previous convictions by court-martial. The latest thereof resulted in a sentence that included a six months' term of confinement, which penalty had been adjudged on December 2, 1959, and was thereafter approved. Thus, it was apparent to the court-martial that at the time of this trial accused had not finished serving the term of imprisonment imposed by the court-martial on the last above-mentioned date. Before closing this court for the purpose of determining sentence, the law officer inquired whether there were any questions, whereupon the following colloquy, which raises the problem here before us, ensued:

"CAPT SNEED (member of court) : Yes. What bearing will the past sentence have? I don't quite know how to phrase this, but the sentence he was serving, what bearing does that have? Does he have to complete that sentence? Is that binding on them, in addition to what this court adjudges?

"LAW OFFICER: The effect of the previous sentence will be a matter for the convening or higher authority to determine. You are entitled to consider this as evidence, the previous convictions. Does the defense request any additional instructions or clarification of that instruction?

"CAPT SNEED: I might clarify the reason behind that question a little. Should this court decide that possibly a greater sentence than the remaining time he is serving—I am not saying what it will do, of course, it is just a way—

"LAW OFFICER: This court cannot bind the convening authority upon this action as to how the other sentence shall be served. The convening authority, if he so desires, could suspend the execution of the other sentence, depending upon this court's action. He may order them to run concurrently so they will both be served at the same time.

"DEFENSE COUNSEL: Or he may order them to run separately.

"LAW OFFICER: He could order them to run separately. Lieutenant Guy, do you have any objection?

"TRIAL COUNSEL: I have nothing further.

"DEFENSE COUNSEL: I have nothing further, sir."

The court then retired for deliberation and returned the sentence set forth hereinbefore.

Appellate defense counsel argue that the accused was prejudiced by the law officer's reply to the court member's questions for two reasons. First, it is urged that the court-martial, in reliance on the law officer's advice, may have fixed the period of confinement under the erroneous impression that the convening or other authority might direct the two sentences to run concurrently, when in fact they were precluded from doing so by Air Force Manual 125–2, September 1, 1956, which prescribes as follows:

"When a prisoner serving a sentence to confinement adjudged by court-martial on or after 31 May 1951 is convicted by a court-martial for another offense and sentenced to a term of confinement, the subsequent sentence, upon being ordered into execution, will begin to run as of the date adjudged and will interrupt the running of the prior sentence. After the subsequent sentence has been fully executed, the prisoner will resume the service of any unremitted interrupted sentence to confinement."

Second, and completely apart from their first avenue of approach, the defense contends the accused was entitled to have his sentences run concurrently as a matter of law. In this connection, they argue that the provisions of Air Force Manual 125–2, supra, are in conflict with the Code and must fall to save the accused from harm. We shall treat with those contentions in reverse order.

Article 57(b), Uniform Code of Military Justice, 10 USC § 857, provides:

"Any period of confinement included in a sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement."

Appellate defense counsel note that this section is a new addition to military law, Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1089, and point out that the only other provision in the Uniform Code pertaining to interruption of the execution of one sentence for service of another is in Article 14(b), 10 USC § 814. That statute provides that delivery of an accused serving a military sentence to civilian authorities, if followed by conviction in a civil tribunal, will interrupt the court-martial sentence, and that he must serve the remainder of such sentence upon his return to military control.

The defense admits it has found no military precedent that a second sentence to confinement by court-martial

will run concurrently from the date adjudged with any existing confinement the accused might then be serving. They urge, however, that the members of Congress, in Article 57(b), supra, established the date confinement would begin to run and provided for no other exceptions but the one contained therein dealing with periods of suspension, and the other in Article 14(b), supra. Thus, they reason, Congress intended no other exceptions. Consequently the defense, claiming similarity—save for availability of bail pending appeal in the civilian jurisdiction—between Article 57(b) and the Federal statute dealing with the same subject, 18 USC § 3568, would have us apply what they denominate the general Federal rule, whereunder two or more sentences to imprisonment run concurrently in the absence of a contrary statute and unless it appears otherwise in the sentence itself. Accordingly, we are importuned to hold that the Air Force directive conflicts with the Code and must be struck down. This we are not at all prepared to do.

The position advocated by appellate defense counsel is not novel. It has been pressed before and █ uniformly rejected. There is no question but that military sentences to confinement had to be served consecutively prior to the enactment of the Uniform Code of Military Justice. Colonel Winthrop in his Military Law and Precedents, 2d ed, 1920 Reprint, has this to say at page 404:

"**Cumulative Sentences, How to Be Framed.** Where a person, while under sentence of imprisonment, is again brought to trial and sentenced to a further measure of the same punishment, it is usual in the civil practice for the sentence to specify that the second imprisonment is to begin at the expiration of the first, indicating the date of such expiration. At military law, however, it is not habitual, nor is it necessary, so to specify, or otherwise to direct in terms that the second punishment, (of imprisonment, forfeiture, or suspension,) is to be executed as addi-

tional to or continuous upon the first. It is sufficient and almost invariable to frame such punishment in the usual form, as an independent sentence; the mere fact that a similar sentence is pending and being executed at the time determining of itself that the second sentence is to be treated not as concurrent but as a distinct additional penalty of which the execution is to commence upon the completion of the first, *i.e.* when the same is terminated by its due expiration, or by a remission on the part of the proper superior authority. The second sentence is thus made cumulative simply by operation of law."

In the Manuals for Courts-Martial, U. S. Army, 1917 and 1921, there are similar provisions which prescribe that when persons subject to military law are undergoing sentences of confinement and they commit offenses for which they are tried and receive similar punishment, the second sentence will be executed upon expiration of the first. This long-established rule was recognized by the Circuit Court of Appeals for the Eighth Circuit in Kirkman v McClaughry, 160 Fed 436 (1908), and more recently by the Court of Appeals for the Tenth Circuit in Mosher v Hudspeth, 123 F2d 401 (1941). We quote from the latter opinion:

"Military prisoners held for punishment under previous sentences are subject to military law and trial by court martial for offenses committed during such imprisonment, and the second sentence will be executed upon the expiration of the first.

"In civil court procedure the practice to incorporate in the judgment that the sentence is to be consecutively or concurrently served is unknown to military judicial procedure."

This Court also recognized that principle as early as United States v Keith, 1 USCMA 442, 4 CMR 34, decided by a unanimous Court little more than a year after the effective date of the

Uniform Code. There we made the following observation:

". . . The concurrent sentence, in the sense in which that device is utilized in the administration of criminal law in the civilian community, is entirely without precedent in military procedure." [1 USCMA at page 448.]

The above-quoted principle is unassailable unless by enacting Article 57(b) of the Uniform ■ Code, supra, Congress intended to authorize concurrent sentences and permit an accused to escape serving full-time on one sentence because a second one was imposed. We are certain no such result was intended. Significantly, the Code itself shows that Congress realized that the serving of a term could be interrupted, for it specifically stated that a sentence once started could be suspended and when that condition arose the period of suspension should be excluded in computing the service of the time of confinement. Furthermore, in Article 14 of the Code, supra, Congress provided that the military could turn over to civilian authorities a person serving time and, if followed by conviction in a civilian court, the delivery would interrupt execution of the military sentence and the period would be excluded from the term imposed by the court-material.

Appellate defense counsel concede the two exceptions, but insist vigorously that they are exclusive and a term of confinement cannot be interrupted for any other reason. We conclude otherwise, and we are supported in our belief by the recent case of Edwards v Madigan, 281 F2d 73 (CA 9th Cir) (1960). In that case the court answered a similar argument in the following language:

"Appellant cites Article 14(b) of the Uniform Code (10 U.S.C.A. § 814) in support of his argument. That section provides that whenever a military prisoner undergoing a court-martial sentence is delivered under appropriate Army regulations to a civil tribunal and is thereafter convicted, the delivery '* * * in-terrupts the execution of the sentence of the court-martial, and the offender after having answered to the civil authorities for his offense shall * * * be returned to military custody for the completion of his sentence.' Appellant contends that if this procedure were intended to apply to successive military sentences, Congress would have expressly done so by a provision similar to Article 14(b).

"This argument disregards the above-stated historical differences between the construction given multiple sentences by military as distinguished from civil tribunals. Where a military prisoner had been sentenced by a civil tribunal, Congress deemed it necessary to interrupt the military sentence while the civil sentence was being served, thus avoiding any conflict with the concurrent sentencing of civil courts and preserving intact independent military sentencing. This provision, in fact, had been enacted by Congress in Article 74 of the Articles of War (former Chapter 36, Title 10, U.S.C.A. § 1546, Articles of War, June 4, 1920, 41 Stat 803), and the same basic provision was re-enacted in Article 14(b) of the Uniform Code."

See also McDonald v Lee, 217 F2d 619 (CA 5th Cir) (1954).

It would seem anomalous to us for Congress to require the interruption of the first sentence if the conviction was in a civilian court but to deny the interruption if the conviction was by court-martial. But, more important, it is worthy of note that Congress did not mention all contingencies which would prevent an accused from being credited with time served. Common sense suggests that if an accused escaped from confinement, his period of service would be interrupted and he would be required to make up the time at the end of the period. Yet, under the defense theory if he was tried and sentenced for that same offense, he might escape serving any additional time. Such a construction is absurd, for it would pay a premium for a mis-

**137**

deed, and a court should not construe a uniform code in such a manner as to bring about that result.

One other absurdity would follow if we adopted the construction pressed on us by the accused. The civilian rule permits the judge to impose concurrent and consecutive sentences, but that authority would be absent in military law. In every instance of multiple sentences, they would, by law, run concurrently and in order for the court-martial to consider properly the appropriate punishment for the second offense, it would need to be instructed on the unexpired term of the first sentence. In no other way could it fix a fair sentence.

That brings us to the Air Force regulations. Section 22 of Title 5, United States Code, provides that █ Secretaries of Departments may promulgate rules and regulations, and they are presumptively valid unless arbitrary and unreasonable or contrary to or inconsistent with the Code. There is nothing arbitrary and unreasonable in requiring that multiple sentences be served consecutively, and the Code does not state that a sentence once started may not be interrupted by the misdeeds of the accused. As a matter of fact, when it deals with criminal conduct prosecuted in civil jurisdictions, it requires that the accused serve the balance of his military term after serving his civilian sentence. There was a necessity for that enactment, for when officials turn over an accused to civilian jurisdiction, they interfere with the running of the period of confinement and that interference cannot be blamed on the accused. But there is no necessity for Congress to state the common-law rule or the long-established military rule that when the accused interferes himself the period is interrupted.

Certainly, before we could hold reasonably that Congress intended to make such a revolutionary change in procedure which had been uniformly recognized and used for over 150 years, we would require a clearer and more positive expression of Congressional

intent than we can find in the Code. In that connection, a reference to the legislative history of the Code shows rather clearly that subsection (b) of Article 57 was enacted to prevent accused persons from languishing in confinement between sentence and date of execution without receiving credit therefor. See Hearings before House Armed Services Committee on H. R. 2498, supra, pages 1089 and 1090. There is a complete absence of anything in the Code or in the Hearings suggesting remotely that Congress was intending to legislate on consecutive and concurrent serving of periods of confinement.

In summation, we restate the following: First, cumulative or consecutive sentences have long been a part of military law. Second, there is no indication Congress intended to engraft concurrent sentences into military justice when it enacted the Code. Rather Article 57(b) seems to have been designed to insure that an accused received credit against a sentence to confinement for time served from the date the court-martial adjudged sentence instead of some later date when punishment was approved by reviewing authority. Third, service regulations such as Air Force Manual 125–2, supra, are merely designed to preserve the concept of consecutive sentences while implementing the codal requirement that a sentence to confinement begins to run from the date adjudged, and such directives are not inconsistent with Article 57(b). Last, the Secretaries of the respective services may properly promulgate such regulations. Clearly, then, we must rule adversely to accused on this arm of his assigned error.

The remaining phase of the defense argument need not detain us long. Obviously, under the applicable regulation, the █ law officer was in error when he apprised the court-martial that the convening authority might order any sentence to confinement to run either concurrently or separately. We note parenthetically, however, that counsel for both parties at trial must

shoulder part of the responsibility for the misadvice for, as may be gleaned from the colloquy quoted previously, all legally trained persons involved in this proceeding apparently agreed with the explanation given to the court member. Moreover, in one sense, the information, although ambiguous, would not be incorrect, for it may be that the law officer meant only to indicate that the convening authority could suspend or remit any sentence to confinement, and thus for all practical purposes render the terms to confinement concurrent.

But, however that may be, it is of no consequence. The important thing to be noted here is that the members of the court were forcefully instructed that the effect of any previous sentence was a matter solely for the determination of reviewing authorities, and that the court-martial could not bind such authorities in any way. And they were elsewhere repeatedly charged in emphatic language that they alone had the independent responsibility to assess an appropriate punishment, wholly without regard to any outside influence and without reliance on possible mitigating action upon review. Manifestly, then, the court was aware that the only way they could insure that accused would be imprisoned for no longer than the period to which he was already under sentence—if that was their intent—would be to impose no confinement whatever. Obviously, they could not have entertained any such intent for the confinement imposed was nine months longer than the full period assessed at the prior trial. It is, therefore, clear beyond cavil that the court-martial deemed an additional and separate sentence to confinement —which would be served consecutively —to be entirely appropriate. Accordingly, there is no possibility that the accused was prejudiced by the law officer's advice, and thus we must reject the second argument advanced by the defense.

For the above-stated reasons, the decision of the board of review is affirmed.

QUINN, Chief Judge (concurring):

I am satisfied that the rule of suspension set out in the principal opinion is correct as applied to this case, where the second offense is committed after the first sentence. The principal opinion does not apply to a case in which the offense, for which the second sentence is imposed, was committed before or at the same time as the offense for which the sentence was adjudged. The latter situation must be considered in the light of the military rule that all offenses should be tried at the same time. With these reservations, I concur in the principal opinion.

FERGUSON, Judge (dissenting):

I dissent.

The only real issue in this case is whether the Secretary of the Air Force may lawfully promulgate regulations which provide that service of an accused's sentence to confinement at hard labor will be interrupted by the ordering into execution of a subsequent sentence to confinement for another offense. In short, are the provisions of Air Force Manual 125-2, September 1, 1956, which make all court-martial sentences consecutive, contrary to the provisions of the Code? The author of the principal opinion holds that they are not, apparently on the simple basis that the opposite conclusion is absurd. I am unable to join him in this belief, as I am of the view that Congress has expressly provided for courts-martial sentences to run concurrently. It may be that this results in unfortunate consequences for the armed forces. However, this is a matter for the legislature to consider and not a change to be made by us under the guise of judicial construction.

Uniform Code of Military Justice, Article 57, 10 USC § 857, provides pertinently:

"(b) *Any period of confinement included in a sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended*

**139**

*shall be excluded in computing the service of the term of confinement.*

*"(c) All other sentences of courts-martial are effective on the date ordered executed."* [Emphasis supplied.]

Air Force Manual 125–2, supra, prescribes the following:

"When a prisoner serving a sentence to confinement adjudged by court-martial on or after 31 May 1951 is convicted by a court-martial for another offense and sentenced to a term of confinement, the subsequent sentence, upon being ordered into execution, will begin to run as of the date adjudged and will interrupt the running of the prior sentence. After the subsequent sentence has been fully executed, the prisoner will resume the service of any unremitted interrupted sentence to confinement."

One need only compare the regulatory provision with the quoted statute in order immediately to detect their inconsistency. The statute prescribes that "Any period of confinement . . . begins to run from the date the sentence is adjudged by the court-martial" and "All *other* sentences . . . are effective on the date ordered executed." On the other hand, the Secretary's regulations provide that the initial sentence will cease to be operative upon the ordering into execution of the second sentence and will not begin to run again until the latter penalty is completed. In other words, Congress has provided that every sentence to confinement shall run from the day adjudged, but the Air Force has decreed that, in the event of multiple sentences, one shall not commence until the other is served.

It may be that the common law permitted imposition of cumulative sentences. See, generally, 15 Am Jur, Criminal Law, § 464, and 18 CJS, Convicts, § 8, and the cases cited therein.[1] Consecutive sentences were then cumulatively executed, however, by adding the second period of confinement to the end of that which accused has already been awarded, rather than by interruption of the initial confinement by the subsequent judgment. Thus, "a prisoner has a right to serve his sentence continuously, and cannot be required to serve it in installments." McDonald v Lee, 217 F2d 619 (CA 5th Cir) (1954), at page 623; White v Pearlman, 42 F2d 788 (CA 10th Cir) (1930). From the tenor of the regulations quoted supra, it is clear the Air Force recognized that merely to delay the effective date of the second sentence would be so clearly in violation of the terms of Code, supra, Article 57, that it could not possibly receive judicial sanction. Hence, it hit upon the device of "interrupting" the service of the first sentence by the adjudication of the second. This attempt to evade the Congressional prescription is so transparent that it should be denied all legal effect. In this connection, I call attention to the fact that a regulation regarding the court-martial process which is inconsistent with the Code simply has no vitality here, regardless of the Secretary's general authority to promulgate such directives. United States v Scott, 11 USCMA 646, 29 CMR 462; Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949). Indeed, the inconsistency between the statute and the regulation is so patent that the principal opinion does not seek to say their provisions can be reconciled. Rather, it bases its conclusion upon the former military practice and its suppositions concerning the intent of the legislative branch.

With respect to the first proposition, I do not imagine anyone would contend that Congress could not change

---

[1] The United States District Courts, however, apply a different rule. Retaining the common-law authority to adjudge cumulative sentences, they apply the principle that all sentences are deemed concurrent in execution unless it clearly appears that the sentencing judge intended for them to run consecutively. This construction governs whether the sentences are adjudged in a single hearing or in different trials. See 18 USC § 3568; United States v Harrison, 156 F Supp 756 (D NJ) (1957); and Sherman v United States, 241 F2d 329 (CA 9th Cir) (1957).

the military view in this area, nor that it even could be argued that Congress did not, by enacting the Code, make the most sweeping changes in the military justice system which have been devised since the days of the American Revolution. Hence, it is difficult to perceive the relevance of authorities such as Winthrop in construing a statute passed by a deliberative assembly concerned with abolishing so many of the former practices of the armed services.

With respect to the determination of Congressional intent, attention must initially be directed to a basic tenet of statutory construction. Courts may not properly go behind the plain and unambiguous words of a legislative enactment in order to seek a basis for its judicial construction. Lewis v United States, 92 US 618, 23 L ed 513 (1876); The Samuel E. Spring, 27 Fed 764 (D Mass) (1886); Berens v Byram, 26 F2d 953 (D SD) (1927); United States v Turner, 246 F2d 228 (CA 2d Cir) (1957); Christner v Poudre Valley Cooperative Ass'n, 235 F2d 946 (CA 10th Cir) (1956). As was cogently noted in the last-cited case by Circuit Judge Phillips, at page 950:

"Courts should confine themselves to the construction of a statute as it is written and not attempt to supply omissions or otherwise amend or change the law under the guise of construction."

It cannot be seriously contended that Code, supra, Article 57, does not clearly and unambiguously provide that all sentences to confinement begin to run from the date on which the penalty is adjudged, whereas all other sentences, except forfeitures, do not commence their operation until ordered into execution. To me, this statutory provision requires no inquiry into its legislative background, for it is clear upon its face and no exception is made either for suspension of the first sentence's execution or for delay of the running of the second sentence until it is ordered into execution with *nunc pro tunc* credit from the date it was adjudged.

Finally, if one grants *arguendo* that we may properly refer to the legislative hearings on the Code and disregard the plain language of Article 57, no basis for consistency between the regulation and the statute can be discovered. The scanty discussion of the confinement provision of the Article makes it clear beyond cavil that Congress was deeply concerned with the former military practice of crediting the accused with no service of confinement until his sentence was approved by the board of review. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1089–1090. Therefore, it provided that all sentences to confinement would begin to run on the date adjudged, even though the accused was actually not in confinement, unless his freedom was due to a suspension of sentence. House Report No. 491, 81st Congress, 1st Session, page 27.

The regulations, however, which we have before us circumvent that Congressional purpose by depriving the accused of simultaneous credit for the two sentences. Indeed, it is clear that he may remain in confinement for a considerable period and receive no credit on his first sentence, even though the second sentence has not been ordered into execution. For example, if A is sentenced to confinement for one year, and six months later receives an identical sentence which is not ordered executed for three months, he receives no credit on the first sentence for the period of delay between the date the second is adjudged and ordered executed, albeit the order has a *nunc pro tunc* effect with respect to the later penalty. Accordingly, it is clear the regulations involve little more than a means to subvert the express command of Congress; are inconsistent with the legislative purpose; and contravene the plain and unambiguous meaning of Code, supra, Article 57.

In sum, therefore, I am of the view that Article 57 requires that all court-martial sentences to confinement run concurrently and that the attempt by the Secretary of the Air Force to cause them to run consecutively is inconsist-

ent with the Code and thus invalid. I might add that this conclusion is not as absurd as the author of the principal opinion seems to believe, when one finds, as one must, that Congress intended for the sentence to run regardless of whether accused was actually under physical restraint.

With regard to the second issue before us, I agree with Judge Latimer that the law officer's instructions effectively informed the court-martial that whether their sentence would run consecutively or concurrently with the former sentence did not concern them and must not affect their deliberations. Accordingly, I find no error in this area.

I would reverse the decision of the board of review and return the record of trial to The Judge Advocate General of the Air Force with an order designed to insure that accused's sentences run concurrently rather than consecutively.