**UNITED STATES**

v.

**Airman Basic Jason P. OLIVER,
United States Air Force.**

**ACM S29849.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 31 May 2000.

Decided 21 March 2002.

Appellate Counsel for Appellant: Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Major Gilbert J. Andia.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo and Lieutenant Colonel Lance B. Sigmon.

Before BURD, Senior Judge, HEAD, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT

BURD, Senior Judge:

On 31 May 2000, the appellant was tried by special court-martial composed of a military judge sitting alone at Hurlburt Field, Florida. Consistent with his pleas, he was found guilty of two specifications of wrongful possession "and or" use of a false military identification card, in violation of Article 134, UCMJ, 10 U.S.C. § 934. His adjudged and approved sentence consists of a bad-conduct discharge, confinement for 39 days, and forfeiture of $100 pay per month for 6 months.

The appellant raises one issue on appeal. We will address this issue and then other matters that have come to our attention during our review of the record of trial.

The appellant claims he is entitled to credit for one day of confinement for the hours he spent in confinement on 31 May 2000, the day of his court-martial. He asks us to award this one-day credit and apply it against his sentence to forfeitures using the equivalencies in Rule for Courts–Martial (R.C.M.) 305(k). Consideration of the appellant's circumstance reveals why he is not entitled to relief.

In addition to the two offenses reflected above, the appellant was arraigned on a third offense of breaking restriction, also in violation of Art. 134, UCMJ. Initially, the appellant pled guilty and was found guilty of this offense along with the two other offenses. This was consistent with a pretrial agreement (PTA) between the appellant and the convening authority.

The appellant had been placed in pretrial confinement on 22 April 2000, after engaging in the acts that formed the breaking restriction allegation. He remained in pretrial confinement until his court-martial on 31 May 2000. The parties agreed at trial that the appellant spent 39 days in pretrial confinement and was, therefore, entitled to 39 days credit against any adjudged confinement. *See United States v. Allen,* 17 M.J. 126 (C.M.A.1984).

During the sentencing portion of the trial, the military judge heard details about the restriction that raised a question as to whether the appellant's plea to breaking restriction was provident. *See* Article 45(a), UCMJ, 10 U.S.C. § 845(a). As a result, the military judge vacated his findings and reopened the inquiry into the providence of the appellant's plea.

After a recess, the trial counsel informed the military judge that the convening author-

ity intended to withdraw the allegation of breaking restriction and had agreed with the appellant to modify the PTA accordingly. The military judge verified the concurrence of the parties to the changes and the appellant's intent to continue with his plea of guilty to the two false identification offenses. The military judge then re-entered findings of guilty on these two offenses.

After the parties presented their pre-sentencing evidence to the military judge, the following exchange occurred.

Military Judge (MJ): Is there any issue, defense counsel, any pretrial confinement issue in this case? There's some reference in his unsworn statement that you all had discussed some issues that might be favorably disposed of as far as this pretrial confinement. Is there any issue, either under Article 13, or some additional credit that he should be getting as a result of—in the defense view—of pretrial confinement?

Defense Counsel (DC): May I have just a moment, Your Honor?

MJ: Yes.

[The accused and his counsel conferred.]

DC: Your Honor, with the consent of Airman Oliver to make the representation to you, we discussed those issues and as a matter of his choice on how he wanted to proceed in the case, strategy decisions and those types of things, he wanted—he did not want to challenge those—I'm sorry. He did not want to challenge the pretrial confinement as illegal. He was wanting to accept responsibility and move forward.

MJ: Okay. So there are no pretrial confinement issues that you're raising. Obviously, he will get credit for any confinement—I guess, any confinement, if the court were to adjudge some—*Allen* credit, but you're not raising either pretrial punishment or that he should get extra credit for any pretrial confinement, or any other issues involving pretrial confinement. Is that right?

DC: That's correct, Your Honor. We're not raising those issues.

After the military judge announced the sentence, he stated that the appellant was to be credited with 39 days of pretrial confinement against his term of confinement. The following exchange then occurred.

DC: Your Honor, may we have just a moment?

MJ: Well, let me just explain it for the audience. I sentenced the accused to confinement which is equal to the amount of time of pretrial confinement that he served, so he will not be going back to confinement, for those who didn't understand what that meant. You need a moment to talk to your client right now?

DC: Just to make sure he understands the sentence.

MJ: Go ahead.

[The accused and his counsel conferred.]

MJ: Actually, I believe the accused should be credited with 40 days pretrial confinement since today counts as pretrial confinement since he was in pretrial confinement. So he's credited with 40 days against his term of confinement, but it still means that he's not going back to confinement, at least not as a result of the sentence of this court.

DC: Thank you, Your Honor.

MJ: Does he understand?

DC: Yes, Your Honor.

■ We have recently held that "any part of a day in pretrial confinement must be calculated as a full day for purposes of pretrial confinement credit ... **except where a day of pretrial confinement is also the day the sentence is imposed.**" *United States v. Doane*, 54 M.J. 978, 984 (A.F.Ct.Crim.App. 2001) (quoting *United States v. DeLeon*, 53 M.J. 658 (Army Ct.Crim.App.2000)) (emphasis added). *See* Article 57(b), UCMJ, 10 U.S.C. § 857(b). *See also United States v. Spencer*, 32 M.J. 841 (N.M.C.M.R.1991). In the usual case involving pretrial confinement—where the accused is held in pretrial confinement through his court-martial and sentenced to confinement in excess of the days spent in pretrial confinement—this rule is easily applied because the accused is returned to confinement after the sentence is announced and receives a full day credit for post-trial confinement for that day. Art. 57(b), UCMJ ("Any period of confinement included in a sentence of a court-martial

begins to run from the date the sentence is adjudged by the court-martial[.]").

■ Here though, the appellant claims that he is entitled to credit for the 39 days pretrial confinement served and additionally is entitled to credit for a full day of confinement for the hours he spent in confinement before attending his court-martial. The claim is subtly attractive because the 39 days adjudged confinement would seem to be consumed by the 39 days *Allen* credit, which would leave the hours of confinement on the day of trial essentially unaccounted for. If we apply the rules that a part day equals a whole day and that adjudged confinement begins to run the day sentenced is announced, then we seem to be forced to conclude that the appellant is entitled to credit for that whole day.

A brief review of the relevant history will show why the appellant's logic fails. Prior to enactment of the UCMJ, no court-martial sentence was carried into execution until approved by the convening authority. Article of War 47(*d*); *See* William Winthrop, *Military Law and Precedents*, 425–26 (2d ed.1920 reprint). Winthrop encapsulated early rules on pretrial confinement in the following passage:

> That the period of an arrest in confinement before trial, or before final action upon the sentence, however unreasonably protracted, cannot legally be *credited* upon the term of imprisonment imposed by the sentence, in executing the same, and that the reviewing authority, if he thinks it just and proper that this period should be deducted from the term adjudged by the court, can do so only by a proportionate mitigation of the sentence in approving the same, or, subsequently by a partial remission,—is also well established. Remissions of what is commonly know as "guard-house time" are not unfrequent [sic] in practice.

*Id.* at 426 (citations omitted). While we typically today see the period of confinement from the date sentence is announced to convening authority action as the initial running of an adjudged sentence to confinement, from a historical perspective, this period may well be better viewed as a codified credit against the approved sentence to confinement. *See*

Art. 57(b), UCMJ. This view is supported by an early case before our superior court: "Article 57(b) seems to have been designed to insure that an accused received credit against a sentence to confinement for time served from the date the court-martial adjudged sentence instead of some later date when punishment was approved by reviewing authority." *United States v. Bryant*, 30 C.M.R. 133, 138, 1961 WL 4412 (C.M.A.1961).

One can only wonder what the drafters of Article 57 would have thought of an appellant demanding credit for a full day of confinement for the morning he spent in confinement on the day sentence was announced in a case where no confinement was· adjudged. The situation would seem to conjure up clichés, e.g., don't look a gift horse in the mouth, no good deed goes unpunished. We suspect they might similarly respond to the appellant's case.

Of course, in—what some might now call the infamous case of—*Allen*, our superior court decided that pretrial confinement served warranted credit against adjudged confinement. Judge Fletcher, writing for the majority, explained that the holding was based on a reading of a Department of Defense Instruction in accord with a recommendation of the American Bar Association. *Id.*, 17 M.J. at 128 (citations omitted).

Interestingly, the view that a prisoner ought to get credit against his adjudged sentence for pretrial restraint was presented to the Congress during its deliberations on the forming of the UCMJ. For example, a statement of Professor Arthur John Keefe of Cornell Law School, who headed a group that studied Navy justice, was entered into the record of the hearings of a subcommittee of the House Armed Services Committee. The statement, which consisted of reasons why Professor Keefe opposed adoption of the proposed Code, reflected the following on sentence credit:

> The barbarous practice of not dating sentence from arrest continues in this code. In case after case our board reviewed, no credit was given for time the enlisted man spent in jail before sentence. Article 57(b) provides that sentence runs from the date

of rendition and I cannot see that any credit is to be given for prior confinement. In our report we asked that credit be given in whole or in part from the date of arrest depending upon whether the defendant was confined to quarters or the post or incarcerated in the brig (Keefe Report, pp. 182–186). The point is important as in many cases delay of trial for proper preparation is in the defendant's interest and if subsequently convicted he ought to receive credit from arrest in the sentence rendered by the trial court.

*Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. on Armed Services,* 81st Cong. 839 (1949) (statement of Prof. Arthur John Keefe, Cornell University Law School). Congress apparently disagreed with Professor Keefe. Apparently, so did the President, the Secretary of Defense's instruction notwithstanding.

In retrospect, it would seem that extension of confinement credit, first from the period between announcement of the sentence and convening authority action by operation of Art. 57(b), UCMJ, and then from pretrial restraint until the day the sentence is announced by the holding of *Allen,* has metastasized to the entitlement the appellant wishes to further extend in his case. When a sentencing authority, for whatever reason, chooses to impose no confinement or attempts to fashion a sentence to time served, we will not interpret Art. 57(b), UCMJ, or any other provision of law to provide a bonus to an accused because of the hours spent in pretrial confinement on the day the sentence is announced. *Cf. Noyd v. Bond,* 395 U.S. 683, 691, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) ("Article 57(b) was not intended to give a litigious serviceman a bonus when he obtains temporary release from confinement the military was seeking to impose").

Solving the question of whether confinement served on the day sentenced is announced is pretrial or post-trial confinement is not the metaphysical breakthrough of our time. Art. 57(b), UCMJ, merely operates to commence adjudged confinement on the day sentenced is announced. An accused in pretrial confinement remains in the same status on the morning before the session of his or her court-martial when the sentence is announced. (Thus it would be improper for confinement officials to treat such a person in pretrial confinement as a post-trial prisoner because they expect announcement of the sentence sometime later that day.)

■ Given the rule that the day the sentence is announced is credited as post-trial confinement, the unavoidable conclusion is that the appellant served part of the first day of his adjudged confinement on the day of his trial. As has long been recognized, *Allen* credit is administrative credit—the military judge has no authority to grant it—confinement officials automatically apply it. *See United States v. Ebanks,* 29 M.J. 926, 928 (A.F.C.M.R.1989). *See also United States v. Rock,* 52 M.J. 154 (1999) and cases cited therein. Assuming the appellant is entitled to a full day credit for that time, he would have had 38 days remaining on his sentence to confinement. Applying the 39 days' *Allen* credit against those 38 days, the appellant was not required to return to confinement after his court-martial.

■ So, what of the extra day of *Allen* credit? Our superior court has recently answered this question. The appellant is not entitled to application of this extra day of *Allen* credit because such credit can only be applied against confinement. *United States v. Smith,* 56 M.J. 290 (2002).

We consider it noteworthy that this result gives full effect to the intentions of the military judge. It is obvious from his explanation of his sentence that he intended to sentence the appellant to time served. *Cf. United States v. McFadyen,* 51 M.J. 289 (1999) (military judge sentenced accused to time served by a sentence to confinement equal to the number of days pretrial confinement).[1]

We turn now to the other matters we have discovered during our review of this case. The two specifications the appellant pled

---

1. *McFadyen* differs from the present case by the existence of a provision in the PTA in *McFadyen* that called for the accused to waive motions on pretrial confinement. Here, the PTA contained no such condition.

guilty to state: "wrongfully **possess and or use** a military identification card, then well knowing the same to be false." (Emphasis added.) This leaves an unacceptable ambiguity in the findings.

R.C.M. 307(c)(3) provides:

(3) *Specification.* A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication. No particular format is required.

There is a lengthy Discussion at the end of the rule that provides guidance on how to draft specifications. Two paragraphs under (G) *Description of offense* warrant consideration.

(iii) *Specificity.* The specification should be sufficiently specific to inform the accused of the conduct charged, to enable the accused to prepare a defense, and to protect the accused against double jeopardy. Only those facts that make the accused's conduct criminal ordinarily should be alleged. Specific evidence supporting the allegations ordinarily should not be included in the specifications.

(iv) *Duplicitousness.* One specification should not allege more than one offense, either conjunctively (the accused "lost and destroyed") or alternatively (the accused "lost or destroyed"). However, if two acts or a series of acts constitute one offense, they may be alleged conjunctively. *See* R.C.M. 906(b)(5).

In the appellant's case, the two specifications are duplicitous both conjunctively and alternatively. The record is silent on whether the prosecution thought they had good reason to draft the specifications in this manner. Further, the trial defense counsel did not raise the matter and the military judge accepted the appellant's pleas and entered findings without questioning the wording of the specifications.

A brief consideration of the facts is necessary to demonstrate the appropriate resolution of this matter. The appellant, with the assistance of another airman, altered the birth date on his military identification card to show that he was 21 when he actually was only 20. He thereafter attempted to enter a club in Panama City, Florida, using the altered card. A club supervisor, upon examining the card, concluded that it was altered. He confiscated the card and turned it over to authorities. On a later date, the appellant was at a shopping mall with a friend. The two were smoking cigars. Two local deputy sheriffs stopped the appellant and his friend and asked for their identification. The two each produced their state driver's license, one from Mississippi and one from Illinois. One deputy was curious how they knew each other when they were from different states. The appellant volunteered they were in the military. The sheriff asked to see their military identification cards. The two complied and the sheriff discovered a discrepancy in the birth dates between the two cards for both the appellant and his friend. When asked by the sheriff about the difference in birth dates on the cards, the appellant admitted his military identification card had been altered. This card was apparently a new identification obtained by the appellant after his previous card was confiscated at the club.

We conclude from these facts that the appellant used an altered military identification card to attempt to enter the club off base. We conclude that the appellant possessed an altered military identification on the second occasion because he provided it to the sheriff only when so asked.[2]

While we find the error in the two specifications to be minor and harmless, we shall correct the ambiguity by modifying the findings. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The findings are modified as follows: Of Specification 1 of the Charge, guilty, except the words, "possess and or;" of the excepted words, not guilty. Of Specification 2 of the Charge, guilty, except the

---

**2.** This conclusion is simply that "possessed" is a more accurate and fair way to characterize the appellant's crime on the second occasion. We do not hold that such facts do not constitute a prosecutable "use" of a false military identification. *See United States v. Blue,* 13 C.M.R. 106, 1953 WL 2396 (C.M.A.1953). *See also United States v. Lewis,* 46 C.M.R. 934, 1972 WL 14533 (A.F.C.M.R.1972); *United States v. Rodriguez,* 40 C.M.R. 822, 1969 WL 6205 (A.B.R.1969).

words, "and or use;" of the excepted words, not guilty.

The appellant points out other errors in footnotes to his Assignment of Errors. First, that the staff judge advocate's recommendation (SJAR) does not mention the fact that the appellant was arraigned on Specification 3 of the Charge and that this specification was withdrawn after arraignment. We note additionally, the Report of Result of Trial and the initial Court–Martial Order (CMO) do not include reference to Specification 3. All these errors are apparent from examination of the record of trial. We find all the errors harmless. Art. 59(a), UCMJ. Of all these minor errors, only the CMO must be corrected. We see no good reason to require a new SJAR or action.

We also note that the action designated the Air Force Corrections System for purpose of confinement. The appropriate language is: "The remaining period of confinement having been served, no place of confinement is designated." Air Force Instruction (AFI) 51–201, *Administration of Military Justice,* ¶ 9.3.3 (3 Oct 1997). We find this error harmless. Art. 59(a), UCMJ. While we see no need for corrective action to substitute the language that should have been used, we emphasize that the corrected CMO must include the initial action. See R.C.M. 1114(c)(1); Forms for Court–Martial Orders, *Manual for Courts–Martial, United States (MCM),* A17 (2000 ed.); AFI 51–201, Chapter 10.

The appellant also mentions that it appears that the defense counsel did not have the opportunity to review the record of trial prior to authentication in accordance with R.C.M. 1103(i)(1)(B). While the record is ambiguous on when the defense counsel was given the opportunity to examine the record of trial, the record does contain a memorandum from the defense counsel requesting an extension to submit clemency matters in which the defense counsel states he and the appellant were served the record of trial prior to 26 June 2000, which was the date they were served the SJAR. The record was authenticated on 15 June 2000. We note no complaint by defense counsel regarding the record. *See United States v. Munoz,* 54 M.J. 917 (A.F.Ct.Crim.App.2001).

The approved findings of guilty, as modified, and the sentence are correct in law and fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). The approved findings of guilty, as modified, and the sentence are

AFFIRMED.