# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Cadet JAMIL D. COOKS
### United States Air Force

### ACM 38426

### 13 January 2014

Sentence adjudged 27 April 2013 by GCM convened at the United States Air Force Academy, Colorado. Military Judge: Grant L. Kratz.

Approved Sentence: Dismissal, confinement for 90 days, and forfeiture of all pay and allowances.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Captain Thomas J. Alford; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

SARAGOSA, WEBER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

WEBER, Judge, delivered the opinion of the court, in which TELLER, Judge, joined. SARAGOSA, Judge, filed an opinion concurring in part and dissenting in part.

At general a court-martial the appellant was convicted, pursuant to his pleas, of two counts of unlawful entry in violation of Article 134, UCMJ, 10 U.S.C. § 934. A panel of officer members also convicted the appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920. The members found the appellant not guilty of attempted forcible sodomy and

aggravated sexual assault. The adjudged and approved sentence consisted of a dismissal, confinement for 90 days, and forfeiture of all pay and allowances.

The appellant now alleges: (1) the evidence is legally and factually insufficient to support his conviction of abusive sexual contact; (2) the pretrial confinement review officer abused her discretion in finding continued pretrial confinement appropriate and necessary; (3) meaningful relief should be granted on sentence appropriateness grounds where the appellant spent more time in pretrial confinement than his approved sentence to confinement; (4) the military judge abused his discretion when he denied cross-examination of Cadet AF, the victim named in the abusive sexual contact specification; and (5) unlawful command influence prohibited him from receiving a fair trial and opportunity for clemency.[1] We also address one issue raised in an appellate motion regarding appellate discovery. Finding no error that materially prejudices the appellant, we affirm.

*Background*

Cadet AF and the appellant met at the United States Air Force Academy (USAFA) during the fall of 2010. They became friends who also occasionally engaged in some level of consensual intimate physical activity. While the precise extent of their relationship and expectations was the focus of some contention at trial, the evidence indicated they did not hold themselves out as boyfriend and girlfriend, and there was no explicit expectation that they would see each other exclusively.

Prior to 17 May 2011, Cadet AF and the appellant had not seen each other for some time. They encountered each other that evening and the appellant asked Cadet AF if she was seeing anyone. She informed him she was interested in someone. The appellant suggested he would come see her later so they could "catch up." Later that evening, Cadet AF was in the squadron activity room, located around the corner from her dorm room, watching a movie with a group of friends. She received a text message from the appellant indicating he was in her dorm room, so she departed the group to meet him. The incident that led to the appellant's conviction for abusive sexual contact then took place in Cadet AF's dorm room, as detailed in the section immediately below. After the appellant left, Cadet AF reported the incident to her best friend and then other friends before making a restricted report of sexual assault three days later. Months after that, she amended her report to an unrestricted report, leading to a law enforcement investigation and this court-martial.

As the appellant was facing charges involving the incident with Cadet AF and another alleged sexual assault that was later withdrawn, he entered two different dorm rooms in which female cadets lived without their permission during the early morning

---

[1] This last issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

hours. The appellant was placed in pretrial confinement after these incidents and remained in confinement until trial.

*Legal and Factual Sufficiency*

The appellant's first two assignments of error assert his conviction for abusive sexual contact should be set aside because the evidence is legally and factually insufficient. We disagree.

The appellant's arrival at Cadet AF's room was not unexpected, as they had seen each other earlier and discussed plans to meet. Cadet AF excused herself from the group, and she testified that she was not concerned about meeting the appellant in her room as the two had spent time alone together on multiple occasions with no cause for concern resulting.

While the appellant asked about the other person Cadet AF was interested in, Cadet AF exchanged text messages with someone else. The appellant took her phone and put it on top of the bookshelf out of her reach. Cadet AF describes this act as playful and non-threatening. The appellant then kissed Cadet AF. She pulled away and said, "I don't think we should do this. We should just be friends." She encouraged the appellant to go to the squadron activity room to watch the movie. The appellant responded, "Why are you being like this?" and "[T]his is 'us'; this is how we've always been." The appellant then made a second attempt to kiss Cadet AF, and she again rebuffed him by pulling away and saying, "We really can't do this. I don't want to do this. We should go watch the movie."

Cadet AF testified that she continued her efforts to leave the room, but the appellant physically blocked her path to the door more than once and locked the door from the inside. (The lock permitted the occupant to open the door from the inside but prevented outsiders without a key from entering.) She stated that she felt "very scared," and she perceived the appellant was growing more angry and intimidating. The disparate size between the two was a factor in Cadet AF's fear, as the appellant was more than a foot taller and 100 pounds heavier than Cadet AF. Cadet AF testified that she asked "one last time" for them to go watch the movie. The appellant responded by saying, "Why are you being like this? You're making me really angry." Cadet AF stated she became more scared because she realized that she could not get out of her room unless he chose to let her pass. Cadet AF described the appellant's demeanor as "really scary, like not – he wasn't yelling at me or like outwardly just sort of towering over me and like threatening like you're making me – like I feel that if I did anything he was going to like snap completely at me."

Cadet AF stated she then went to her bed with the appellant in an effort to avoid provoking him. She testified that in the bed, the appellant touched her breast under her shirt and then digitally penetrated her without her consent. The members acquitted the

appellant of a specification involving the digital penetration. After the digital penetration, according to Cadet AF, the appellant ignored her request for him to leave and said, "Why are you being like this? This is us. This is how we – this is us. Um – you're being really annoying. Why are you being like this?"

Cadet AF testified she then realized the appellant was not going to leave. She stated the appellant then put his hand on top of her head and moved it downward as if he wanted her to perform oral sex on him. The appellant was acquitted of attempted forcible oral sodomy for this incident. Cadet AF testified that she refused to perform oral sex on the appellant and forcefully told him "not to do that and don't ever do that to me again." At that point, she testified, the appellant became visibly angry with her and said, "Well, if you won't do that – um – then – then do this," while gesturing to his penis and making a hand motion, indicating he wanted her to masturbate him. Cadet AF testified she felt scared because the appellant was growing more and more angry with her. She stated she did not know what he was going to do, that she "just really, really wanted him to leave [her] room," and she "didn't care about anything" at this point. She testified she did not want to masturbate him, but she felt if she did this he would finally leave. She therefore masturbated him until he ejaculated. She stated the two did not look at each other or speak during the act, and the atmosphere was very uncomfortable and tense. She then got off of the bed, threw his shorts and a towel at him, and stood with her hand on the door waiting for him to clean up and put his clothes on. Once he had his clothes on, Cadet AF opened the door and the appellant walked out without saying a word.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the Government, a reasonable fact finder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n resolving questions of legal sufficiency, [this court is] bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

The offense of which the appellant was convicted charged that the appellant caused Cadet AF to touch his genitalia with her hand by threatening her and placing her in fear that she would be subjected to bodily harm. Under the version of Article 120, UCMJ, then in effect, "threatening or placing [another] person in fear" is defined as "a

communication or action that is of sufficient consequence to cause a reasonable fear that non-compliance will result in the victim or another person being subjected to a lesser degree of harm than death, grievous bodily harm, or kidnapping." *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45.a.(t)(7)(A) (2008 ed.). We presume Congress intentionally utilized a broad definition that includes any "lesser degree of harm" short of death, grievous bodily harm, or kidnapping. Congress specifically outlined two such types of lesser degree of harm in the staute: physical injury to another person or to another person's property, or certain types of threats toward a person's interests rather than physical harm. *MCM*, Part IV, ¶ 45.a.(t)(7)(B). However, we see nothing in the statute that explicitly limits "lesser degree of harm" to the narrow categories listed that cover specific situations not applicable in many cases. We therefore find that the statutory construction principle of *expression unius est exclusion alterius* (to express or include one thing implies the exclusion of the other) does not apply here. *See United States v. Quick*, 74 M.J. 517 (N.M. Ct. Crim. App. 2014) (defining and employing this statutory construction principle). Under the statute, the appellant may be found guilty of abusive sexual contact if he threatened or placed Cadet AF in fear of a lesser degree of harm than death, grievous bodily harm, or kidnapping. By necessary implication of this broad statutory definition, one such lesser degree of harm may be bodily harm, defined as any "offensive touching of another, however slight." *MCM*, Part IV, ¶ 45.a.(t)(8).

The appellant essentially argues that because the members acquitted him of the offenses involving the alleged digital penetration and attempted forcible sodomy, insufficient evidence of any acts by the appellant to place Cadet AF in fear remained. He asserts the members could not logically find that the appellant threatened or placed Cadet AF in fear for the later charged abusive sexual contact when they did not convict the appellant of threatening or placing Cadet AF in fear for the earlier acts. In a related argument, he contends that Cadet AF's actions in response to the alleged attempted forcible sodomy demonstrated she was not actually afraid of the appellant because she firmly told him she would not perform oral sex on him.

We see nothing in the members' resolution of this case that renders the appellant's conviction of abusive sexual contact factually or legally insufficient. First, inconsistent verdicts are not a valid reason to challenge a conviction. "We follow the Supreme Court's admonition that it is 'imprudent and unworkable' to allow an accused to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them." *United States v. Emmons*, 31 M.J. 108, 112 (C.M.A. 1990) (quoting *United States v. Powell*, 469 U.S. 57, 66 (1984)); *Powell*, 469 U.S. at 66 ("The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable . . . ."). An inconsistent verdict in and of itself is not typically a cause for relief since the court-martial may merely have given the accused "a break." *United States v. Lyons*, 35 C.M.R. 279, 285 (C.M.A. 1965).

Therefore, the relevant question in this case is whether the abusive sexual contact conviction is factually and legally sufficient in and of itself, not whether the conviction for abusive sexual contact is consistent with the acquittals concerning other charged acts.

The evidence raised no significant dispute as to whether the sexual contact occurred. The central issue on appeal is whether the appellant caused the sexual contact by threatening or placing Cadet AF in fear, including fear of any offensive touching, however slight. We find the appellant did exactly that. Cadet AF testified that she made repeated requests to leave the room to go watch a movie, but her efforts were thwarted by the appellant's actions. These actions included kissing her when she vocalized she did not want to be kissed, physically blocking Cadet AF from leaving, taking her phone (albeit in a playful manner), locking the door, stating she was making him angry, questioning why she was "being like this," telling her she was being "annoying," and becoming "visibly angry" at Cadet AF. While not necessary to our analysis, the appellant's repeated acts of touching Cadet AF after she vocalized that she did not want to engage in intimate activity with him reinforce the members' conclusion that Cadet AF feared she would incur some form of bodily harm from the appellant if she did not accede to his sexual demands, as the term "bodily harm" is defined by the *Manual*.[2] Cadet AF could reasonably believe she would continue to be subjected to offensive touching unless she gave in to the appellant's persistent attempts at sexual activity.[3]

Viewing the evidence in the light most favorable to the Government, we find a reasonable fact finder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt, and as such find the conviction legally sufficient. Moreover, after making allowances for not personally having observed the witnesses, and considering the broad definition utilized in the statute applicable to the appellant, we find the appellant's conviction for abusive sexual contact factually sufficient. Although the cross-examination of Cadet AF brought out some inconsistencies in her statements and suggested she might have understated the intimate nature of her relationship with the appellant leading up to the alleged assault, her testimony on the material facts of what transpired in her room that evening remained consistent. Evidence of Cadet AF's

---

[2] These acts of touching included, but were not limited to, digital penetration and attempted forcible sodomy of which the appellant was acquitted. As with the case of inconsistent verdicts, we do not know what caused the members to find the appellant not guilty of these offenses. The members may not have believed the conduct alleged occurred, they may have found that the conduct occurred but a defense existed, or they simply may have shown leniency to the appellant. We do note that the defense strategy was not to specifically contest that the activity occurred, but rather to allege that Cadet AF's accounts were inconsistent and that she reported this as a sexual assault because she was upset that the appellant would not reciprocate her feelings for him. Ultimately, we consider Cadet AF's testimony about these touchings just as we consider the entire record on matters of legal and factual sufficiency. We draw no adverse inferences to the appellant concerning these matters of which he was acquitted. We simply consider these matters as part of the totality of the circumstances of what occurred that evening.

[3] We note that our interpretation of the broad abusive sexual contact statute at issue here, including the applicable definitions, might in some situations criminalize what many consider lawful interaction between couples. Recognizing that our broad authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), allows us to approve only those findings of guilt that we find "should be approved," *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010), we decline to exercise that authority in this case.

demeanor immediately after the incident is consistent with her version of events. Under these circumstances, we have little trouble with the members' conclusion that Cadet AF engaged in the sexual act out of fear that the appellant would offensively touch her in some way. Our dissenting colleague finds this charge and specification factually insufficient because of the varying accounts Cadet AF provided to two fellow cadets after the charged incident. We disagree. The other cadets' accounts corroborated Cadet AF's testimony more than they contradicted it, and these inconsistencies can easily be explained by factors such as the passage of time, normal discrepancies that occur when an account is passed from person to person, and Cadet AF's understandable unwillingness to share every detail with others. The members heard these matters and nonetheless found Cadet AF credible, and recognizing we did not see or hear the witnesses, we similarly find the appellant's conviction for abusive sexual contact factually sufficient.

*Pretrial Confinement and Sentence Appropriateness*

The appellant raises two issues with respect to his pretrial confinement. First, he asserts the pretrial confinement review officer (PCRO) abused her discretion in finding continued pretrial confinement was appropriate. Second, he argues that because his total pretrial confinement days exceeded his adjudged and approved sentence of 90 days confinement, he did not receive the benefit of his credit for time served and thus asks this court to grant him meaningful sentence appropriateness relief in the form of setting aside his dismissal.

The appellant was placed into pretrial confinement on 3 December 2012 following incidents on 2 December 2012 where he entered two separate dorm rooms of two different female cadets in the middle of the night without their permission. He committed these two unlawful entry offenses while court-martial charges were pending and an Article 32, UCMJ, 10 U.S.C. § 832, hearing was scheduled to investigate the offenses involving Cadet AF along with another specification that was later withdrawn. These additional unlawful entry offenses were subsequently investigated at that same Article 32, UCMJ, hearing and referred to the pending court-martial. The appellant plead guilty to both charges of unlawful entry under Article 134, UCMJ.

After being placed in pretrial confinement, the appellant waived his pretrial confinement review hearing. He later challenged his continued presence in pretrial confinement by way of a request for reconsideration to the PCRO on 26 February 2013. The PCRO reconsidered her decision but again found that the appellant's conduct caused her to be concerned about the public's safety. She further noted that while she considered lesser forms of restraint, "the nature of operations on the Air Force Academy make[s] other forms of restraint unavailable or inadequate."

After referral, the appellant requested remedial action for the PCRO's decision to continue pretrial confinement. The military judge ruled:

> This court finds that in making her decision to continue the pretrial confinement of the accused, the PCRO considered lesser options, received necessary and relevant input from the necessary parties, and did not abuse her discretion in continuing the accused's pretrial confinement. The accused is therefore not entitled to additional pretrial confinement credit based on the PCRO's decision.

On appeal, the appellant argues that after the facts of the two unlawful entry offenses were presented at the Article 32, UCMJ, hearing, the initial concern that he was a "sexual predator . . . on the loose at the Academy" were dispelled. He argues that these two "benign" incidents of unlawful entry did not provide the factual basis for the PCRO to find either (1) he would not appear at trial or pretrial hearings or (2) he would continue to engage in serious misconduct. *See* Rule for Courts-Martial (R.C.M.) 305(h)(2)(B)(iii). He further asserts the PCRO failed to consider lesser forms of restraint or abused her discretion in finding lesser forms of restraint inadequate. Finally, he asserts the military judge abused his discretion in denying his pretrial motion for appropriate relief.

This court reviews the decisions of both the PCRO and the military judge concerning the propriety of pretrial confinement for abuse of discretion. *United States v. Gaither*, 45 M.J. 349, 351 (C.A.A.F. 1996). In considering the correctness of these prior rulings, this court limits its review to the facts before the deciding official. *Id*.

We find no abuse of discretion by the PCRO in finding that confinement was necessary and no abuse of discretion by the military judge in upholding the PCRO's decision. While the appellant characterizes these unlawful entry offenses as benign, he appears to be minimizing or offering mitigation or extenuation as to his motive for entering into two female cadets' rooms in the early morning hours while they were sleeping. Neither the PCRO nor the military judge was bound to agree with this characterization of these offenses. The facts before each of them were that the appellant was pending charges for aggravated sexual assault, attempted forcible sodomy, and abusive sexual contact in Cadet AF's dorm room. The appellant was also facing a separate specification of abusive sexual contact against another female, although that specification was withdrawn before trial. Despite these charges, the appellant entered the dorm rooms of two female cadets without their permission while they were sleeping. These facts were sufficient for the PCRO and the military judge to find pretrial confinement appropriate, and we find no abuse of discretion in their decisions.

The appellant also asks this court to grant him meaningful relief for the confinement credit he was awarded beyond his adjudged and approved 90 days confinement. He reasons that the combination of illegal pretrial punishment (as asserted in the issue discussed immediately above) and the fact that he spent more time in pretrial punishment than his approved sentence renders his sentence inappropriately severe.

The appellant has presented no legal authority that he is entitled to any meaningful relief for pretrial confinement time that was *not* illegal even if it does exceed the adjudged and approved sentence. Having found no illegal pretrial confinement on the appellant's other assignment of error, the only illegal pretrial confinement at issue is a 13-day[4] period when the appellant was comingled with a post-trial inmate. This issue was litigated at trial. The military judge inquired into the length of pretrial confinement and the parties agreed that the appellant would be entitled to 146 days credit aside from any relief under Article 13, UCMJ, 10 U.S.C. § 834. The military judge awarded the appellant an additional 13 days of credit for illegal pretrial confinement. This means the appellant received a total of 159 days of pretrial confinement credit when his adjudged and approved sentence was only 90 days.

The appellant's argument ignores the difference between credit for illegal pretrial punishment and *Allen*[5] credit for lawful pretrial confinement. Our superior court has held "there is no legal requirement that appellant be given credit for his pretrial confinement" where an appellant spends time in pretrial confinement but is not sentenced to confinement. *United States v. Smith*, 56 M.J. 290, 293 (C.A.A.F. 2002); s*ee also United States v. Oliver*, 56 M.J. 779, 783 (A.F. Ct. Crim. App. 2002). Credit for illegal pretrial punishment is ordered by the military judge and incorporated by the convening authority at action, including, when necessary, the conversion specified in R.C.M. 305(k). Any additional credit under *Allen* is applied administratively by confinement officials in accordance with the Department of Defense Manual 1325.7-M, *DoD Sentence Computation Manual*, (27 July 2004), in computing the duration of confinement. In this case, the convening authority correctly applied 13 days of credit for illegal pretrial punishment against the adjudged period of confinement at action. No credit against other punishments for lawful pretrial confinement is necessary or appropriate in this situation, and we see nothing about the appellant's situation that renders his adjudged and approved sentence inappropriate.

*Confrontation Clause*

The appellant next asserts the military judge abused his discretion when he denied trial defense counsel the right to cross-examine Cadet AF on issues of trial preparation and thereby violated the appellant's Sixth Amendment[6] right of confrontation. We disagree.

The appellant filed a pretrial motion asserting the Special Victims' Counsel (SVC) program was simply an arm of the prosecution and Cadet AF's assigned SVC lacked standing to have any involvement in the court-martial proceeding. The appellant

---

[4] Although the briefs refer to 12 days of credit referenced in the military judge's original written ruling, the military judge corrected his computation on the record to 13 days.
[5] *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).
[6] U.S. CONST. amend. VI.

requested a ruling denying the SVC any role in the case and authorizing the defense to ask Cadet AF questions regarding her preparation for trial.

The appellant's argument is premised on his factual assertion that the military judge's ruling broadly banned trial defense counsel from asking any questions that might possibly invoke an answer covered by the attorney-client privilege. To the contrary, the military judge ruled as follows: "With respect to the questions that defense counsel requests be asked of the alleged victim, having found that a privilege does exist between the special victims' counsel and the alleged victim, those questions may be asked only to the extent that they don't violate that privilege." This ruling is not nearly as broad as the appellant portrays. The military judge further issued a written ruling on the motion that stated:

> With respect to the questions requested by Defense Counsel to be answered by the alleged victim, the court finds that the alleged victim has entered into an attorney/client relationship with the SVC, and this court will not pierce that privilege. The extent of such an *interview* will be determined by the alleged victim and SVC.

(Emphasis added).

The motion was dated prior to trial defense counsel's interview with the alleged victim. The motion, opposition, and the military judge's ruling all appear to be related to a pretrial interview with Cadet AF rather than cross-examination at the time of trial. At the time the motion was argued, the SVC was given an opportunity to be heard and informed the court the following:

> I did attend defense counsel's interview with my client yesterday. What defense counsel didn't note is that I didn't actually interject at all during the interview. I didn't assert any sort of privilege. I let him ask whatever questions he wanted to ask. And so really he could have asked her anything. In fact, he did ask her what statements that she had seen, if she had seen anything else, and she answered honestly. So with regards to what she's—you know—used to prepare for trial, he's already asked those questions.

Trial defense counsel conducted a pretrial interview with Cadet AF and asked questions related to pretrial preparation. There are no facts in the record to suggest that any questions were posed to Cadet AF during that interview to which the privilege was invoked. To the extent that further questioning was desired, but not asked, nothing in the military judge's ruling prohibited such further questioning. In fact, while the military judge's ruling may have declared the existence of an attorney-client privilege, he

specifically left the extent of the interview and any invocation of the privilege up to the SVC and Cadet AF. Additionally, there were several questions related to pretrial preparation posed to Cadet AF at trial, but none to which a privilege was invoked and none that were left unanswered. Neither the appellant's brief nor the record identifies a single question posed to Cadet AF by trial defense counsel relating to pretrial preparation that the military judge disallowed. Finally, the record as a whole reflects trial defense counsel effectively highlighted the various inconsistencies between Cadet AF's pretrial statements and trial testimony as well as the inconsistencies between Cadet AF's trial testimony and the testimony of several other witnesses recounting what Cadet AF told them regarding the incident.

As the military judge made no ruling prohibiting cross-examination in this area, we find no abuse of discretion. Even assuming some error by the military judge, any such error was harmless beyond a reasonable doubt.

*Unlawful Command Influence*

The appellant contends the military judge erred and abused his discretion in denying the defense motion to dismiss for unlawful command influence and asks this court to set aside his conviction. We find no abuse of discretion and no error.

At trial, the defense moved to dismiss the charges based on apparent unlawful command influence, relying largely on myriad statements, news reports, briefings, and other documents related to sexual assault in the military. None of the numerous relied-upon documents presented with the motion made reference to the appellant's case. The appellant argued that he could not "receive a fair trial, and fair court-martial processing, in [his] case because the Air Force military justice system, and all actors in it, have been poisoned by unlawful command influence – that perception is reality." He also argued there was actual unlawful command influence present in this case and "[t]hrough some, or multiple, superiors in the civilian government, [Department of Defense], military, and Air Force, every individual involved in [his case] has received the message that the only correct result in a military case alleging rape/sexual assault is prosecution, conviction and stiff sentence."

The Government opposed the motion, arguing that the defense failed to show facts which, if true, constituted unlawful command influence. *See United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The Government also presented affidavits from the general court-martial convening authority, the special court-martial convening authority, and the staff judge advocate. All affirmed that while they were aware of cases highlighted in the media, the SVC program, and statements by Department of Defense and Air Force leadership, none of that information influenced decisions made in the appellant's case.

The military judge denied the defense motion, making detailed findings of fact as follows:

1. Defense Counsel has submitted a myriad of statements, news reports, briefings, and other documents related to sexual assault in the military. This court finds that such statements did take place, but are indicative of and reflect a valid, legitimate interest and concerted effort to eliminate the crime of sexual assault from the military. The comments and policy statements about sexual assault are more focused on eradicating true sexual assaults in the military and none of the facts proffered constitute an attempt to influence any particular case. There are no comments about the accused's case in any of the defense submissions.

2. I find the policy on zero tolerance for sexual assault, the comments attributed to the [Secretary of Defense] by a member of Congress, and all of the matters submitted by Defense Counsel are what they purport to be, but I find that they do not amount to Unlawful Command Influence, and that they have had no impact on the processing of this case.

3. I have ordered declarations from the Special Court-Martial Convening Authority, the General Court-Martial Convening Authority, and their respective Staff Judge Advocate to ensure that no other source unlawfully tainted their decisions to forward the charges or refer them to this court. Having reviewed these declarations, I find that the case was handled properly and fairly and without any indication of unlawful command influence.

4. With respect to Sexual Assault training, I find that such training is not perfect in a legal sense in that technically legally erroneous statements can be made by non-legal and non-command personnel to the rank and file [A]ir [F]orce members in an incomplete but good faith attempt to translate legal standards into language understandable by the newest 18 year old basic trainee.

5. Defense Counsel has also attached and referenced several statements and documents relating to the Special Victim[s'] Counsel program recently implemented by the Air Force. This court finds that there is nothing inherent in such program that implies or infers that the rights of the accused to a fair

trial should be in any [way] affected by said program. The
Special Victim[s'] Counsel program has been created to assist
alleged victims, and does not affect any rights of the accused
in the court-martial process.

The military judge concluded that: (1) the defense failed to establish facts, which if true, would constitute unlawful command influence; (2) even if the defense had met this threshold burden, the Government proved beyond a reasonable doubt that the facts presented do not amount to unlawful command influence; and (3) even if the facts did amount to unlawful command influence, the Government proved beyond a reasonable doubt that the unlawful command influence would not affect the proceedings.

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (internal quotation marks omitted). "Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an intolerable strain on public perception of the military justice system." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F.2006) (quoting *United States v. Stoneman*, 57 M.J. 35, 42–43 (C.A.A.F. 2002)) (internal quotation marks omitted). "Whether the conduct of the Government in [a] case created an appearance of unlawful command influence is determined objectively." *Id*. Because the focus is on the perception of fairness as viewed through the eyes of a reasonable member of the public, "the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id*.

At trial, the burden of raising the issue of unlawful command influence rests with defense counsel. *Biagase*, 50 M.J. at 150. The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id*. To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id*. If the defense meets that burden to raise the issue, the burden shifts to the Government, which must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F.2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks

omitted). "Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt." *Id.* (quoting *Stoneman*, 57 M.J. at 41).

"Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo." *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).

We do not find the military judge's findings of fact clearly erroneous. The military judge reviewed the declarations from the general and special court-martial convening authorities as well as the staff judge advocate. He found none of them was subjected to any attempt to influence or coerce the handling of this case. The defense did not present any evidence of "witnesses who decided not to testify because of the alleged statements by senior military officials or any other specific facts that the court-martial process was tainted by unlawful command influence." *United States v Ashby*, 68 M.J. 108, 129 (C.A.A.F. 2009). Accordingly, we find no actual unlawful command influence in this case.

We also find no apparent unlawful command influence. The appellant was represented by energetic and effective counsel. They conducted substantial motion practice on this issue and others. They questioned potential members in detail about their exposure to senior officials' statements about sexual assault in the military. The military judge appropriately applied the liberal grant mandate and ultimately sustained three of the defense's four challenges for cause on this issue. Court members had the benefit of probing cross-examinations of Government witnesses. The military judge appropriately instructed them on their duty to consider impartially only the evidence before them and the law, and provided a specifically-tailored instruction reminding court members of their duty despite any perception of pressure or influence from sources outside the courtroom. We do not find cause for a reasonable member of the public to doubt the fairness of the proceedings.

*Appellate Discovery*

In preparation for filing an assignment of errors, the appellant moved this court to order appellate discovery concerning any involvement by a confidential informant in the appellant's case. The appellant supported his motion with newspaper articles that detailed the activities of Cadet Eric Thomas in a number of USAFA criminal investigations. One article also states as follows: "Documents show [Cadet Thomas] also fed information to [the Air Force Office of Special Investigations] that led to the 2013 sexual assault conviction of another cadet, linebacker Jamil Cooks." The appellant asserted that the Government was required to disclose this information before trial under *Brady v. Maryland*, 373 U.S. 83 (1963), and therefore he moved this court to compel the production of any evidence related to Cadet Thomas's activities in the investigation or prosecution of the appellant's case.

This court denied the appellant's motion, finding that under *United States v. Campbell*, 57 M.J. 134 (C.A.A.F. 2002), the appellant failed to meet his threshold burden of demonstrating some measure of appellate inquiry was warranted. We found the appellant failed to satisfy any of the four *Campbell* factors to indicate appellate discovery was warranted. *See id* at 138. After we issued this order, our superior court ordered a *DuBay* hearing[7] to investigate whether the Government's failure to disclose Cadet Thomas's status as a confidential informant affected the court-martial in a different Air Force Academy case. *United States v. Claxton*, __ M.J. __ No. 14-0409/AF (Daily Journal 15 September 2014).

Our superior court's order in *Claxton* provides no reason to disturb our previous order denying appellate discovery in this case. Unlike *Claxton*, where Cadet Thomas testified during the court-martial, here Cadet Thomas did not testify. In fact, no mention of him appears anywhere in the record of trial, including the report of investigation regarding Cadet AF. We also see no reasonable possibility that Cadet Thomas provided any information to Air Force investigators regarding the allegations by Cadet AF. Cadet AF reported this allegation on her own, and she and the appellant were the only two witnesses to the charged act. None of the other witnesses at trial or in the report of investigation gave any indication that Cadet Thomas had any information relevant to Cadet AF's allegations.

Air Force investigators initially explored other alleged sexual assaults by the appellant against two other women. Neither allegation resulted in any charge referred to trial. While Cadet Thomas was not named in either of these investigations, our review of these reports of investigation revealed that if Cadet Thomas did provide any information to investigators, it was almost certainly in relation to the third report of investigation contained in the record of trial. That investigation led to no preferred charges and no information introduced at the appellant's trial. Under these circumstances, we see no reason why the appellant should be entitled to any information about Cadet Thomas's apparent activities as a confidential informant.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

---

[7] *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

Judge SARAGOSA, concurring in part and dissenting in part.

After review of the entire record in this case, I concur with the majority in all respects except that related to the appellant's claim that the evidence was factually insufficient as to the abusive sexual contact charge and specification. After thoroughly weighing all of the evidence in the record of trial, particularly the testimony of Cadet AF, Cadet SL, and Cadet KD, and making allowances for not having personally observed the witnesses, I am left with three varying versions of the happenings inside Cadet AF's dorm room on the date in question. Because I cannot reconcile these three versions, I am not convinced beyond a reasonable doubt that the appellant is guilty of this charge and specification.

I am particularly troubled by the fact that Cadet AF's roommate and close friend testified regarding statements of Cadet AF that were completely contrary to her trial testimony. According to Cadet SL's testimony, Cadet AF told her she and the appellant "went onto the bed because it was more comfortable. They started to kiss a little bit, and then they were touching each other over their clothes." Cadet AF never told her she was blocked from exiting the room, never stated she was scared of the appellant, never told her the appellant threatened her, and never told her the appellant forced her in any manner. While Cadet AF told Cadet SL that "she didn't want to do what she did to [the appellant]," she told Cadet SL that she gave him oral sex because she felt "obligated" to touch him after he touched her, and she wanted him to leave.

Additional inconsistencies were found in Cadet AF's rendition of the events to Cadet KD. Cadet KD testified that Cadet AF was "okay with" the appellant kissing her, fooling around with her, and touching her breasts. He further testified that Cadet AF told him the appellant asked for oral sex, but that she had said, "No." A review of his testimony reveals no discussion between him and Cadet AF about her masturbating the appellant at all.

The inconsistent testimony of Cadet AF's confidants and her own testimony as detailed in the majority opinion leave me unconvinced that the elements of the criminal offense of abusive sexual contact have been established by proof beyond a reasonable doubt as required to sustain a conviction. Therefore, I would reverse the finding of guilty as to the charge and specification of abusive sexual contact.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court